My name is Mary Drivage and I represent Kimberly Freeman the appellant and plaintiff in this case. I request to reserve four minutes for rebuttal. The court below erred as a matter of law by excluding relevant evidence in this Title VII race discrimination case involving Kimberly Freeman who is hired as an intern for the Social Security Administration. They violate, the district court violated the Brioni standard which was affirmed by the Ninth Circuit in Bateman v. USPS by failing to determine whether there was excusable neglect in the 34-minute late submissions by myself. I was 34 minutes late in submitting a motion to further elucidate the court on the specifics of the five motions in limine that were filed by the government and three motions in limine that were filed. Let me just ask you a question about your reference to Brionis. Brionis dealt with Rule 60B, a motion under Rule 60B. That's correct. For relief from a failure to comply with an order on the grounds of excusable neglect. Right. And that There was no such motion here, was there? Once the judge denied or wouldn't granted the motions in limine with respect, I guess it was what, one and two, motion in limine one and two? That's correct. Did you, presumably I gather on the grounds that there were, your response was untimely. The offer of proof was untimely, as you just said, 34 minutes. Did you come back with a motion under Rule 60B for relief? On the grounds of excusable neglect? We came back with the motion for new trial under 59. Well, okay. So you didn't file the motion under 60B, correct? That's correct. All right. Now, the judge told you way up in advance what he was going to do if he didn't comply with this order. Yes, because a prior brief had – there was computer problems and I filed one brief late. Was there any ambiguity in what he told you? Yes, there was. I took him to mean the close of business. And so when I filed the motion electronically at 4.34 p.m. and drove it over to the court and got it delivered by 4.59, I thought that I was timely, but I misunderstood that he meant 4 p.m. was close of business. And when I looked back over the court's transcript, it was clear he did say 4 p.m. instead of 5 p.m. Let me ask you, did you – I said Rule 60B, but did you – how about a motion for reconsideration? Did you ask him to reconsider what he did? Well, he made clear in – during the course of the pretrial conference that he was going to allow us to present evidence. And throughout the trial, we had arguments before the case was presented to the jury each morning concerning issues that would arguably be nuances that had to do with the preclusive order. So did he kind of sort of adjust his ruling as the trial progressed? He did allow in certain evidence based on our careful preparation for the trial so that we showed how it was relevant and not unduly prejudicial. And that evidence was allowed in in certain circumstances and continued to be excluded in other circumstances. Then at the end of the trial, he issued a jury instruction telling the jurors that they could not consider any of the adverse evidence showing that African-American coworkers were discriminated against during the same time that they were present. And so that's a discretionary call on his part, correct? That's correct. But there still needs to be a determination that the evidence was unduly prejudicial. And we maintain that when we have a party admission that the director of the office calls the plaintiff in on the first day of her employment and tells her not to associate with the negative people in the office and then fires her for socializing with them when in fact she's asking them work-related questions, that that is not unduly prejudicial. It goes directly to the race discrimination claim that was allowed into trial after careful briefing. And I might add I counted up nine briefs on the issue of the racial harassment, race discrimination, and preclusion of valid circumstantial evidence showing that race was a factor in her determination. So the decision by the Court to instruct the jury that they could not consider any of the evidence of racial discrimination against the other African-Americans violated Sprint v. Mendelson, in which the U.S. Supreme Court said that this is a fact-intensive inquiry that must be made. There was no fact-intensive inquiry. The Court didn't preclude the trial the district judges from invoking Rule 403, if they thought that that was appropriate. To avoid unnecessary little side trials. Right. The discussion about whether a mini-trial would have been required is an interesting one, because we were provided a certain number of minutes within which to try this case, and we brought all of the African-American co-workers who had filed EEO complaints up to testify to certain aspects that were being permitted to be put before the jury. All of those individuals tried as best they could to testify within the ambits of these severely restrictive ruling, pretrial rulings. The government did not raise any questions or very few questions in cross-examination, and we had at the end of the day over three hours, which could have been used to put forward to the jury very important, significant facts that would have enabled them to find race discrimination was the basis for filing. The one thing that I, there was this allegation that, well, I guess it's not, but the supervisor of the management office says don't associate with people in the negative corner. The negative corner. Was that commonly understood in the office as a racial slur? Yes, there was racial stereotyping that the African-Americans were negative because they were being denied the terms and conditions that were given to other similarly situated people historically. They had been denied promotions. They had been denied opportunities for supervisory, temporary slots and so on. Now, I thought that her mentor was from that, quote, negative corner. No, the mentor was a woman that was from Africa, raised in Britain. She's black but not African-American, and she had some issues of her own, filed grievances because of problems that she was having, but she was considered to be highly respected, resourceful, a good supervisor, and she was assigned as my client's mentor. That was the only black person in the office that my client was permitted to talk to at all during the workday. Was there evidence that any of her supervisors said don't speak with any other African-American? I don't think that they used the term African-American. They said don't talk to them. You know Paula Singer does not want you to talk to them. And it was understood that that was the people in the negative corner. It was a racially segregated workplace in which the African-Americans that filed EEO complaints were all sitting in the same part of the office, and she was not to go over there to talk to them, even on a very brief social basis, much less to ask them questions about how to perform the job. You had a couple of other issues related to the trial. Yes. One of the issues was whether or not we could present the evidence of the union contract which provided the procedures for which one would document performance problems. Up until the time that Ms. Freeman was fired, she had no performance problems except for the allegation in the midyear performance that she was excessively socializing because she did occasionally talk to other African-Americans. The comparator employee, Teresa Galan, who is Hispanic, got into trouble issuing a $10,000 check. That check was a very serious problem, and she told the supervisor the events were covered up and swiped under the table with the excuse that, well, she's a new employee and new employees can make mistakes. Similarly treated employees should be allowed to be considered, if they're from a different group, as proof of pretext. Now, in Kimberly Freeman's case, in the notice that she was being terminated, there was a reference made to an incident in which she required that the complainant, that the individual who is coming in for an address change problem submit additional documentation. She was basically enforcing the SSA rules and guarding against an unauthorized second check being submitted to a Social Security claimant. That was a proper use of her authority. No one on the jury could find that they were comparable employees under the court's instruction, which was that the comparable employees must have committed problems of a similar nature. And what we maintain is that the, because Kimberly Freeman was following the agency's regulations, she should not have been required to meet the test that the court was requiring her. There were a number of other exclusions. If I remember correctly, that instruction pretty much paralleled or was taken from our case law. Yes, Vasquez versus city, county of Los Angeles. So is it your argument that that was legally incorrect? It's a legal error because my client was not a supervisor. My client and the other comparable employee were trained at the same time, hired at the same time, worked alongside of each other and had the identical duties, the identical supervisor. They had different mentors. They worked, they were hired on the same day and put through the same training. Did you make that argument to the jury? We, I think that I explained that to the jury in great detail, both in the closing argument and the rebuttal argument. However, with the instruction, they could not find for the client based on that. Okay. I'd like to reserve the remaining time. Sure. Thank you. Good morning. May it please the Court. My name is Claire Cormier. I'm an assistant United States attorney, and I represent the defendant, Appellee Michael Astrew, the commissioner of the Social Security Administration. There are several issues in this appeal, but they fall into three categories, exclusion of evidence, jury instructions and summary judgment. The district court made proper rulings in all three categories, giving the jury appropriate evidence, instructions and claims to consider, and the judgment for the defendant should be affirmed. I'd like to start with the exclusion of evidence issue. As the Court has already delved into it, there was no motion to the district court for relief from the late filing. So to the extent that the timeliness is the reason that the district court excluded evidence, had the plaintiff wanted to get relief from that, there were various things she could have done. She could have made a 6B motion for relief from the late filing. She could have made a 60B motion. She could have done a motion for reconsideration. In fact, the first time that the plaintiff appellant has asked any court to do an excusable neglect analysis of the 34-minute late filing is the reply brief to this Court. This issue has been waived. However, apart from the waiver of it, the district court is well within its rights to enforce its deadlines. The case law and the rules of civil procedure certainly allow for that. He was a little strict here. It's a little strict, but the judge was very, very explicit in giving the plaintiff warnings. At the pretrial conference, he started off the pretrial conference by asking why other late filings should have been allowed, said, well, you should have filed an administrative motion for relief, and plaintiff's counsel said, you're right, I should have filed an administrative motion. He then was very, very explicit. There was no ambiguity in the deadline. It was November 21st, 4 p.m., both e-filing and Chambers copy delivered. And he said very clearly, if it's not in the offeror proof, filed on time, it does not come in. But it looks like as the trial progressed, he did give some consideration to her attempt to introduce the evidence that she wanted with respect to ---- I would say that he still did not allow any evidence of the negative treatment of the coworkers. He allowed some evidence of racial tensions in the office. He allowed evidence of the fact that when Vicki Curry first started working there, she noticed that the African-American service reps were sort of over in one corner. But he did not allow any evidence of negative treatment of the coworkers. Particular treatment of the coworkers. Correct. Right. And in fact, to the extent that he thought any of it slipped in, he gave the curative instruction. Right. However, even if the timing issue were not dispositive, I believe, in this case, he also stated on the record that he was ruling on the basis of 403. He did that later. The express ruling in the order was on the basis of the timeliness. But he did later state that he had done a rule 403 analysis. He had looked at Supreme Court authority. And he was trying to avoid many trials. He said that on the record at page 700 in the transcript, as well as at least one other place. So even if the timeliness were not enough, he made a 403 analysis of the evidence and properly excluded it. Appellant's counsel said that there were three hours left one day that could have been used for this. Had the plaintiff put on three hours of evidence of all of the claims that these people were making of their negative treatment, there would have been days of evidence necessary. And, by the way, several of those witnesses that we would have put on for that purpose had already been excused. So there certainly would have been prejudice had that been opened up to further evidence. With regard to the jury instructions in this case, the similarly situated instruction, as you noted, is directly from the Vasquez case. Appellant has argued that that's not relevant because Ms. Freeman was not a supervisor and in Vasquez there was a discrepancy between supervisor and not. That's only true as between Mr. Vasquez and Ms. Berglund in the Vasquez case. In the Vasquez case, Mr. Vasquez and Mr. Ng were both nonsupervisory employees and the difference that the Ninth Circuit looked at between Mr. Vasquez and Mr. Ng was that Mr. Ng had not engaged in misconduct of comparable seriousness. That is directly the language that we put into the jury instruction that the Court used here. It is clearly a proper statement of Ninth Circuit law. And every case cited by the appellant, other than Vasquez, is not from this circuit. But in fact, in Aramburu, Radu, and Hollins, from the Sixth, Seventh, and Tenth Circuits, all cited by appellant, there are similar statements in those cases about employees who violated work rules of comparable seriousness in Aramburu. In Radu, it says a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct. In Hollins, it says that the employees must be engaged in misconduct of comparable seriousness. It's, I think, almost the exact wording of Vasquez. With regard to the curative instruction that was given by the district court, it is the appellee's position that this issue was waived by the appellant, as was the issue of the 34 minutes late excusable neglect analysis. All of the record citations that appellants cited to say that here we did really preserve this issue by arguing the underlying issue. The last item that is listed, it's on page 15 of her reply brief in a footnote, is document no. 173. The actual language of the instruction was not proposed by the district court until document no. 174. After that time, we had an opportunity for a fairly lengthy charging conference on December 15th, during which the judge specifically asked plaintiff's counsel, are there any of the court's proposed instructions that may or may not have been the subject of requests that we haven't discussed as to which the plaintiff objects? And counsel responded, no, Your Honor. That's in the transcript at page 1167 to 1168. There was absolutely no objection made to the actual instruction given by the district court, and pursuant to Rule 51, that needed to be done, or else it is waived. With regard to summary judgment, there were two claims eliminated on summary judgment, the hostile work environment and the retaliation by association or third-party retaliation. It's called different things in different cases. And this is an issue that is first impression for the Ninth Circuit. We haven't really looked at that issue. The Ninth Circuit has not? Correct. However, other circuits have. And the district court judge looked at what other circuits had done and made his ruling on two grounds. His first ruling was that you can't do this, that the language of the statute says you have to have been the one to have engaged in protected activity. However, he went beyond that and said, but even if that could be done, even if in certain circumstances you could bring a retaliation claim, even though you yourself did not engage in protected activity, that's limited to situations where the employee who engaged in the protected activity and the employee who suffered the adverse action are closely associated. It tends to be spouses most often, sometimes father-son, siblings, that sort of thing. Now, this issue is currently before the United States Supreme Court. Appellant cited to the Thompson case out of the Sixth Circuit. Appellant actually cited to the panel decision, even though there had been a en banc decision reversing the panel decision. So the current Sixth Circuit decision is actually the opposite of what appellant cited. It is that you can't do this type of claim at all, that the statute doesn't allow  And the Supreme Court granted cert on that case? The Supreme Court has granted cert to look at whether a, quote, closely associated employee can sue for retaliation based on another employee's protected activity. So one option for this Court would be to wait for the Supreme Court, but I don't think you need to because Ms. Freeman was not a closely associated employee to the people who had made their own EEO claims, who had engaged in protected activity. What evidence did she present on summary judgment regarding that? The evidence that we presented was that at her own deposition. So in summary judgment, she would have had to make a showing that she was close Let's just assume. She didn't make an association, that I can recall. I don't recall her making an argument. Or at least raise a tribal issue of fact that she was closely associated. I don't believe she made that argument, that it had to be a close association. My recollection of the evidence This was knocked down on summary judgment, so you'd look at the summary judgment record, not the trial record. Correct. And at summary judgment, we put on the evidence from her deposition that she had stated that she was no closer to these employees than other people in the office. Co-workers. Co-workers. This is not a situation of In Thompson, it was a fiancé. In the other cases cited by appellant, some of them aren't even retaliation cases, but they tend to be spouses or I think there's a father and son one. There's nothing where it's just a co-worker that you're not particularly close to that allows this kind of claim to go forward. So this Court doesn't need to wait for the Supreme Court's decision. What about the situation where a co-worker helps another worker file a claim? That you have engaged in protected activity. Engaged in protected activity? Correct. You've engaged in the EEO process. How about where you express sympathy for another co-worker who's filed an EEO claim? I guess we'd need to know in what context one expressed the sympathy. If you just say, gee, it's really sorry that you're being treated this way, that doesn't seem to me to rise to the level of protected activity or a sufficiently close association. What if they went to the manager and said, you know, you're You're treating this person badly? Then I think that that is opposing a, you know, what at least people are viewing as illegal activity and therefore it would fall within the parameters of a Title VII retaliation. It's really engaging in protected activity. Yes, it is. Because engaging in protected activity can either be using the mechanisms of Title VII or opposing an illegal practice. So if you go to your supervisor and you say, you're treating Kim Freeman really badly, I think you're treating her badly because she's an African-American, then you have opposed a practice. What if your best buddies can go to Starbucks for every break and lunch hour to have coffee? The cases haven't gotten that far. That's not the situation here, though. I don't think this Court needs to make that determination, particularly given that the Supreme Court is mulling over this whole issue right now. I think this Court can look at the facts of this case, the evidence that was presented to the district court on summary judgment in this case, and see that it doesn't rise to the level of anything that any of the other circuits cited by the district court or by the appellant have found to be a sufficiently close association. Okay. With regard to the hostile work environment claim, the Harris case in the Supreme Court requires that there be both subjective and objective components to the hostile work environment. And in this case, the plaintiff argued that because other employees felt that there was hostility in the workplace, that that should transfer over to Ms. Freeman. But Ms. Freeman herself testified that she thought everything was fine at work until the day she was terminated. She thought she got along fine with her supervisor. She was really surprised when she got fired because she thought everything was terrific. So even if the other employees might potentially have had a hostile work environment claim, Ms. Freeman doesn't get to bring that claim because she herself was not suffering from a hostile work environment. Appellant cites to the Ziske case where evidence of hostility not witnessed by the plaintiff, but was still allowed in the case, in the analysis. But in that case, what the plaintiff testified to that she experienced was completely consistent with what the other employees testified to. And therefore, it helped to show that, you know, gave her credibility, that there was something broader than just what she was suffering, but she was suffering. I think it's a she. I can't remember for sure. But here, as I said, Ms. Freeman thought everything was fine. There was no subjectively hostile work environment here. If the Court has no further questions, I would submit. Thank you. Thank you. Thank you. With respect to the Vasquez decision, the facts in this case are different from Vasquez and the other cases in which there is violation of rules of comparable seriousness. Ms. Freeman did not violate rules of comparable seriousness. She was doing a good job. We attempted to present evidence of the statistics showing that her paperwork was at the same level as the journeyman SSA employees that she was being compared to. She was an effective and efficient employee. With respect to the waiver argument, it is true that the Court gave us the proposed jury instructions the night before they were to be read to the jury. And there was a significant change in which inserted and never proposed before any place in the record is the instruction that the adverse treatment of other African-Americans would not be able to be considered by the jury to the extent that they, in spite of all the adverse rulings on these evidentiary problems, if they gleaned that there was racial harassment of the other employees, that could not be considered. And that included the fact that one of the people who was attempting to help Ms. Freeman and answer her questions was a woman who had severe diabetes, and she was ordered back to her desk when she was trying to help Ms. Freeman. She testified at trial that she overheard that she was instructed, you know, there were constant instructions to not socialize, and socialize meaning any conversations at work about work-related or any other topics. So when we go to the issue that was precluded from us at the motion for summary judgment stage, what is significant is we did present in opposition to the argument that all the racial harassment claims should be precluded from the jury trial, we presented evidence, number one, that Ms. Freeman was fired because she socialized with the other African-Americans. There wasn't any evidence that she was, except for an occasional baby shower, spending a lot of time off-duty, but she was friendly with people at the office in a very proficient and professional manner. There was no incidence in which she disobeyed an order or was not performing her job that were documented. We presented evidence that she asked for all of the evidence that supported the reasons for firing her. And there was an argument made that she had to wrap up. I would like to refer you to our reply briefs for more arguments on that score. Thank you very much. Thank you. We appreciate counsel's arguments on this matter. And it's submitted at this time.
judges: Duffy, Noonan, Paez